**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF PUERTO RICO**

ARIEL A. COLLAZO ALGARÍN,

    Plaintiff,

    v.

COMMISSIONER OF SOCIAL SECURITY,

    Defendant.

CIVIL NO.: 18-1759 (MEL)

**OPINION AND ORDER**

### I. Procedural and Factual Background

Pending before the court is Mr. Ariel A. Collazo Algarín's ("Plaintiff") appeal from the decision of the Commissioner of Social Security ("the Commissioner") denying his application for disability benefits under the Social Security Act. ECF No. 12. On May 29, 2013, Plaintiff filed an application for Social Security benefits alleging that on October 7, 2011 ("the onset date"), he became unable to work due to disability. Tr. 101.[1] Prior to the onset date, Plaintiff worked as a pharmaceutical operator. Tr. 110, 127-28. Plaintiff met the insured status requirements of the Social Security Act through December 31, 2018. Tr. 103. Plaintiff's disability claim was denied on October 25, 2013, and upon reconsideration. Tr. 101.

Thereafter, Plaintiff requested a hearing which was held on July 15, 2016 before Administrative Law Judge Gerardo R. Picó ("the ALJ"). Tr. 101, 117-129. On August 31, 2016, the ALJ issued a written decision finding that Plaintiff was not disabled. Tr. 111. Thereafter, Plaintiff requested review of the ALJ's decision. The Appeals Council denied Plaintiff's request for review, rendering the ALJ's decision the final decision of the Commissioner, subject to

---

[1] "Tr." refers to the transcript of the record of proceedings.

judicial review. Tr. 1-6. Plaintiff filed a complaint on October 10, 2018. ECF No. 1. Both parties have filed supporting memoranda. ECF Nos. 12, 13.

## II.     Legal Standard

### A. Standard of Review

Once the Commissioner has rendered a final determination on an application for disability benefits, a district court "shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing [that decision], with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). The court's review is limited to determining whether the ALJ employed the proper legal standards and whether his factual findings were founded upon sufficient evidence. Specifically, the court "must examine the record and uphold a final decision of the Commissioner denying benefits, unless the decision is based on a faulty legal thesis or factual error." López-Vargas v. Comm'r of Soc. Sec., 518 F. Supp. 2d 333, 335 (D.P.R. 2007) (citing Manso-Pizarro v. Sec'y of Health & Human Servs., 76 F.3d 15, 16 (1st Cir. 1996) (per curiam)).

Additionally, "[t]he findings of the Commissioner . . . as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971). The standard requires "'more than a mere scintilla of evidence but may be somewhat less than a preponderance' of the evidence." Ginsburg v. Richardson, 436 F.2d 1146, 1148 (3d Cir. 1971) (quoting Laws v. Celebrezze, 368 F.2d 640, 642 (4th Cir. 1966)).

While the Commissioner's findings of fact are conclusive when they are supported by substantial evidence, they are "not conclusive when derived by ignoring evidence, misapplying

the law, or judging matters entrusted to experts." Nguyen v. Chater, 172 F.3d 31, 35 (1st Cir. 1999) (per curiam) (citing Da Rosa v. Sec'y of Health & Human Servs., 803 F.2d 24, 26 (1st Cir. 1986) (per curiam); Ortiz v. Sec'y of Health & Human Servs., 955 F.2d 765, 769 (1st Cir. 1991) (per curiam)). Moreover, a determination of substantiality must be made based on the record as a whole. See Ortiz, 955 F.2d at 769 (citing Rodríguez v. Sec'y of Health & Human Servs., 647 F.2d 218, 222 (1st Cir. 1981)). However, "[i]t is the responsibility of the [ALJ] to determine issues of credibility and to draw inferences from the record evidence." Id. Therefore, the court "must affirm the [Commissioner's] resolution, even if the record arguably could justify a different conclusion, so long as it is supported by substantial evidence." Rodríguez Pagán v. Sec'y of Health & Human Servs., 819 F.2d 1, 3 (1st Cir. 1987) (per curiam).

**B. Disability under the Social Security Act**

To establish entitlement to disability benefits, a plaintiff bears the burden of proving that he is disabled within the meaning of the Social Security Act. See Bowen v. Yuckert, 482 U.S. 137, 146 n.5, 146–47 (1987). An individual is deemed to be disabled under the Social Security Act if he is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).

Claims for disability benefits are evaluated according to a five-step sequential process. 20 C.F.R. § 404.1520; Barnhart v. Thomas, 540 U.S. 20, 24–25 (2003); Cleveland v. Policy Mgmt. Sys. Corp., 526 U.S. 795, 804 (1999); Yuckert, 482 U.S. at 140–42. If it is determined that plaintiff is not disabled at any step in the evaluation process, then the analysis will not proceed to the next step. 20 C.F.R. § 404.1520(a)(4). At step one, it is determined whether

plaintiff is working and thus engaged in "substantial gainful activity." 20 C.F.R. § 404.1520(a)(4)(i). If he is, then disability benefits are denied. 20 C.F.R. § 404.1520(b). Step two requires the ALJ to determine whether plaintiff has "a severe medically determinable physical or mental impairment" or severe combination of impairments. 20 C.F.R. § 404.1520(a)(4)(ii). If he does, then the ALJ determines at step three whether plaintiff's impairment or impairments are equivalent to one of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. 20 C.F.R. § 404.1520(a)(4)(iii). If so, then plaintiff is conclusively found to be disabled. 20 C.F.R. § 404.1520(d). If not, then the ALJ at step four assesses whether plaintiff's impairment or impairments prevent him from doing the type of work he has done in the past. 20 C.F.R. § 404.1520(a)(4)(iv).

In assessing an individual's impairments, the ALJ considers all of the relevant evidence in the case record to determine the most the individual can do in a work setting despite the limitations imposed by his mental and physical impairments. 20 C.F.R. § 404.1545(a)(1). This finding is known as the individual's residual functional capacity ("RFC"). Id. If the ALJ concludes that plaintiff's impairment or impairments do prevent him from performing his past relevant work, the analysis proceeds to step five. At this final step, the ALJ evaluates whether plaintiff's RFC, combined with his age, education, and work experience, allows him to perform any other work that is available in the national economy. 20 C.F.R. § 404.1520(a)(4)(v). If the ALJ determines that there is work in the national economy that plaintiff can perform, then disability benefits are denied. 20 C.F.R. § 404.1520(g).

### C. The ALJ's Decision

In the case at hand, the ALJ found that Plaintiff met the insured status requirements of the Social Security Act through December 31, 2018. Tr. 103. Then, at step one of the sequential

evaluation process, the ALJ found that Plaintiff had not engaged in substantial gainful activity during the relevant period. Id. At step two, the ALJ determined that Plaintiff had the following severe impairments: degenerative disc disease, lumbar radiculopathy, depression, and anxiety. Id. At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. Tr. 103. Next, the ALJ determined that during the relevant period

> [Plaintiff] has the residual functional capacity to perform a reduced range of light work as defined in 20 C.F.R. 404.1567(b). He can occasionally lift, carry, push, and pull twenty pounds occasionally and ten pounds frequently; he can sit, stand, or walk for six hours in an eight-hour workday; he can frequently climb, balance, stoop, kneel, crouch, and crawl; he can perform simple, two-step tasks, and he can persist at a task for two hours, with 15 minute breaks.

Tr. 106. At step four, the ALJ determined that through the date last insured, Plaintiff could not perform his past relevant work as a pharmaceutical operator. Tr. 110, 127. At step five, the ALJ presented Plaintiff's RFC limitations, as well as his age, education, and work experience to a vocational expert. Tr. 110-11. The vocational expert testified that an individual with a similar RFC would be able to perform the following representative occupations: cashier, storage facility rental clerk, and "can filling and closing machine tender." Tr. 111, 128-29. Because there was work in the national economy that Plaintiff could perform, the ALJ concluded that he was not disabled. Tr. 111.

**III.    Legal Analysis**

Plaintiff objects to the ALJ's final decision denying disability benefits on three grounds. First, Plaintiff alleges that the ALJ erred in finding that his mental condition did not meet the criteria of Listing 12.04. ECF No. 12, at 11-12. Next, Plaintiff claims that the ALJ's RFC

determination is not supported by substantial evidence. Id. at 13-14. Lastly, Plaintiff alleges that the Medical-Vocational Guidelines direct a finding of disability. Id. at 15.

### A. The ALJ's Step Three Determination

Plaintiff alleges that he meets the requirements of Listing 12.04. ECF No. 12, at 11. Specifically, Plaintiff contends that he has marked limitations in the Paragraph B criteria. Id. A claimant bears the burden to demonstrate that he meets all the specified duration and objective medical requirements of a Listing. See Sullivan v. Zebley, 493 U.S. 521, 530 (1990) ("For a claimant to show that his impairment matches a listing, it must meet all of the specified medical criteria. An impairment that manifests only some of those criteria, no matter how severely, does not qualify.").

In the case at hand, the ALJ applied Listings 12.04 (affective disorders) and 12.06 (anxiety-related disorders). Tr. 103-106. Paragraph B of Listings 12.04 and 12.06 each require that the claimant's mental impairment result in at least two of the following: (1) marked restrictions of activities of daily living; (2) marked difficulties in maintaining social functioning; (3) marked difficulties in maintaining concentration, persistence or pace; or (4) repeated episodes of decompensation, each of extended duration.[2] See 20 C.F.R. Pt. 404, Subpt. P, App. 1, §§ 12.04B, 12.06B; Ruperto v. Comm'r of Soc. Sec., Civ. No. 14-1673, 2016 WL 1239927, at *2 (D.P.R. Mar. 28, 2016); Díaz v. Colvin, Civ. No. 14-13363, 2016 WL 2992909, at *6 (D. Mass. Mar. 28, 2016) ("the criteria of Paragraph B under both Listing 12.04 and 12.06 are identical.").

---

[2] Plaintiff erroneously references the revised version of the Paragraph B criteria. ECF No. 12, at 11. The medical criteria used to evaluate claims involving mental disorders have been revised, effective January 17, 2017. See García-Cortés v. Saul, Civ. No. 19-1319, 2020 WL 5822470, at *10 n.6 (D.P.R. Sept. 29, 2020). The revised criteria apply to ALJ decisions issued after January 17, 2017. The ALJ's decision in the case at bar was issued on August 31, 2016, so the old criteria apply. Tr. 111.

In the case at hand, the ALJ reasonably found that Plaintiff did not satisfy the criteria of Paragraph B. Tr. 104-06. In activities of daily living, the ALJ found that Plaintiff had mild restrictions. Tr. 104. The ALJ noted that Plaintiff alleged difficulty with activities of personal care, grooming, and lack of appetite. Tr. 104, 138. In October 2013, however, consultative psychiatrist Dr. Luis A. Toro ("Dr. Toro") examined Plaintiff and observed that he was well developed, well nourished, and had a very neat and clean appearance. Tr. 104, 521. Plaintiff reported to Dr. Toro that he helps his wife with household tasks and that he reads the newspaper, listens to the radio, and watches television for entertainment. Tr. 520. It was also reported by Plaintiff that he takes care of his personal needs without supervision. Id. The ALJ noted that Plaintiff's allegation in his June 2013 function report that he could not drive was contradicted by his testimony at the hearing where he admitted that he can drive independently for up to 30 minutes at a time. Tr. 104, 124, 140. Plaintiff also testified that he can cook simple meals for himself. Tr. 125-26.

As to maintaining social functioning, the ALJ found only a mild limitation as Plaintiff reported to Dr. Toro in October 2013 that he spends time with his wife, sons, and neighbors and gets along well with them. Tr. 520. Plaintiff also reported that he got along well with his coworkers and supervisors when he was working. Id. Dr. Toro found that Plaintiff was cooperative and calm during the interview and opined that he was capable of normal interpersonal relationships. Tr. 521. The ALJ also noted that Plaintiff was able to properly interact with all present at the hearing and displayed a pleasant and courteous demeanor throughout the proceedings. Tr. 104.

The ALJ found that Plaintiff had a moderate limitation in maintaining concentration, persistence, or pace. Tr. 105. The ALJ noted that Plaintiff alleged difficulties with memory,

7

concentration, ability to complete tasks, and ability to follow instructions. Tr. 105, 142. In October 2013, Dr. Toro examined Plaintiff and found that he was oriented in all spheres, presented good recent, immediate, and remote memory, displayed normal attention, concentration, and retention, and did not show impaired judgment and reasoning. Tr. 521. In March 2014, treating neurologist Dr. Alexis Duprey Colón ("Dr. Duprey") diagnosed Plaintiff with memory loss. Tr. 562. The ALJ, however, noted that the diagnosis appeared to be based solely upon the claimant's self-reporting since the progress notes did not mention any tests showing an objective finding of actual memory loss. Tr. 105. Subsequent progress notes from Dr. Duprey reflected that Plaintiff was oriented in all spheres and maintained good insight and judgment.[3] Tr. 564, 566, 568, 570, 572, 574, 576. In April 2014, state agency consultant clinical psychologist Dr. Hugo Román Rivera ("Dr. Román") reviewed the record and opined that Plaintiff had moderate difficulties in maintaining concentration, persistence, or pace. Tr. 245. The ALJ found that Plaintiff was able to answer all questions posed at the hearing, asked for clarifications when required, and promptly recalled all relevant names, dates, and events. Tr. 105. Lastly, the ALJ noted that the record did not reflect episodes of decompensation of extended duration as defined by the regulations. Id.

     Plaintiff argues that his mental impairment deteriorated significantly to a degree that he is completely nonfunctional and references a medical report by treating psychiatrist Dr. Milagros Ortiz Tavárez ("Dr. Ortiz"). ECF No. 12, at 12. In May 2013, Dr. Ortiz examined Plaintiff and opined that his memory, attention span, and concentration are affected, "such that his competitive work capability is nonexistent, making him unable to perform the basic requirements of any remunerative activity." Tr. 171. Dr. Ortiz also opined that Plaintiff's prognosis is "very

---

[3] These progress notes correspond to Dr. Duprey's treatment of Plaintiff in May 2014, September 2014, November 2014, December 2014, March 2015, June 2015, and November 2015.

poor" and that "he is totally disabled from an emotional, social, and labor-standard standpoint." Tr. 171-72. Dr. Ortiz's statement that Plaintiff is "totally disabled" does not constitute a medical opinion as the issue of disability is a finding reserved solely to the Commissioner. See 20 C.F.R. § 404.1527(d).

The ALJ reasonably assigned little weight to Dr. Ortiz's opinion as it was inconsistent with Plaintiff's testimony that he can drive and cook for himself and the fact that he was able to answer all questions posed at the hearing, asked for clarifications when required, and promptly recalled all relevant names, dates, and events. Tr. 105, 109, 124-26. Dr. Ortiz's opinion is also inconsistent with Dr. Toro's October 2013 assessment that Plaintiff presented good recent, immediate, and remote memory, displayed normal attention, concentration, and retention, and did not show impaired judgment and reasoning. Tr. 521. Further, Dr. Ortiz's opinion is inconsistent with Dr. Duprey's progress notes which reflected that Plaintiff was oriented in all spheres, had an appropriate affect and demeanor, and maintained good insight and judgment.[4] Tr. 564, 566, 568, 570, 572, 574, 576. See Lozada-Miranda v. Comm'r of Soc. Sec., Civ. No. 18-1410, 2020 WL 4671838, at *6 (D.P.R. Aug. 11, 2020) ("the opinion of a treating physician need not be given controlling weight where the ALJ determines that it is inconsistent with the other substantial evidence in [the] case record.").

---

[4] These progress notes correspond to Dr. Duprey's treatment of Plaintiff in May 2014, September 2014, November 2014, December 2014, March 2015, June 2015, and November 2015. Plaintiff also references December 22, 2016 progress notes from Dr. Ortiz in support of his argument that he meets the requirements of Paragraph B. Tr. 38. The December 22, 2016 progress notes from Dr. Ortiz were not considered by the ALJ, but were submitted to the Appeals Council. Tr. 2. The Appeals Council found that this additional evidence did not relate to the period at issue, and thus, it does not affect the decision about whether Plaintiff was disabled beginning on or before August 31, 2016. Tr. 2; Castro v. Saul, Civ. No. 19-120, 2020 WL 5088024, at *3 (D. Conn. Aug. 28, 2020) ("[T]he Appeals Council will review a case if, among other conditions, it 'receives additional evidence that is new, material, and relates to the period on or before the date of the hearing decision, and there is a reasonable probability that the additional evidence would change the outcome of the decision.'"); 20 C.F.R. § 404.970(b). Plaintiff has not presented any arguments that the Appeals Council erred in finding that Dr. Ortiz's December 22, 2016 progress notes did not relate to the period at issue.

Plaintiff also references a report from examining neuropsychologist Dr. Luis Francisco Sánchez Longo ("Dr. Sánchez") who evaluated Plaintiff in March 2017. Tr. 21. The Appeals Council found that Dr. Sánchez's report did not relate to the period at issue which ended on August 31, 2016. Tr. 2. Plaintiff does not set forth any arguments that the Appeals Council erred in its decision to deny his request for review or that Dr. Sánchez's report relates to the period at issue.

Lastly, in arguing that he meets Listing 12.04, Plaintiff refers to two hospitalizations for depression symptoms that occurred on April 17, 2013 and September 30, 2016. Tr. 62, 164. These hospitalizations, however, do not show that the ALJ erred in finding that Plaintiff's mental impairment did not meet the requirements of Listing 12.04. Evidence regarding the September 30, 2016 hospitalization was submitted to the Appeals Council which concluded that this hospitalization did not relate to the period on or before the ALJ's decision on August 31, 2016. Tr. 2, 111; 20 C.F.R. § 404.970(b). Plaintiff has not provided any developed argumentation that the Appeals Council erred in denying his request for review or that the September 30, 2016 hospitalization relates to the period on or before the ALJ's decision.

The April 17, 2013 hospitalization also does not provide a basis to contradict the ALJ's finding that Plaintiff did not experience repeated episodes of decompensation, which were of extended duration. Tr. 105. Episodes of decompensation refers to an exacerbation or temporary increase in symptoms, which ordinarily requires increased treatment. Hutchins v. Astrue, Civ. No. 9-10900, 2010 WL 3895183, at *2 n.2 (D. Mass. Sept. 30, 2010). Under the regulations, repeated episodes of decompensation each of extended duration requires three episodes in a one-year period, or an average of one every four months. See García-Cortés v. Saul, Civ. No. 19-1319, 2020 WL 5822470, at *10 (D.P.R. Sept. 29, 2020) (citing 20 C.F.R. pt. 404 subpt. P, App.

1, Part A2, § 12.00(b)). Therefore, Plaintiff's April 17, 2013 hospitalization is insufficient by itself to establish repeated episodes of decompensation each of extended duration because hospitalizations did not occur with sufficient frequency. Id. Furthermore, even if Plaintiff did proffer sufficient evidence demonstrating repeated episodes of decompensation each of extended duration, which he has not, he still has not cited to sufficient evidence demonstrating a marked limitation in any of the other Paragraph B criteria. Accordingly, there is no reason to overturn the ALJ's step three determination that Plaintiff did not meet the requirements of Listing 12.04.

### B. The ALJ's RFC Determination

Plaintiff claims that the ALJ's RFC determination is not supported by substantial evidence. ECF No. 12, at 14. The ALJ is responsible for determining a claimant's RFC based on all the relevant evidence, including a claimant's medical record, the medical opinions, and a claimant's descriptions of his limitations. 20 C.F.R. §§ 404.1545, 404.1546. A claimant's RFC is the most he can do despite limitations from his impairments. Id. The claimant, however, has the burden of providing evidence to establish how his impairments limit his RFC. 42 U.S.C. § 423(d)(5)(A); Freeman v. Barnhart, 274 F.3d 606, 608 (1st Cir. 2001).

Plaintiff specifically alleges that he has a RFC to perform less than sedentary work activities and that he can only lift or carry less than 10 pounds, stand or walk for more than 2 hours in an 8 hour workday, and cannot sit for more than 30 minutes during an 8 hour workday. ECF No. 12, at 14. Plaintiff's claims are untenable as the ALJ reasonably considered the medical evidence in the record to find that he could perform a range of light work.

In April 2013, examining radiologist Dr. Manuel R. Espinosa ("Dr. Espinosa") conducted a lumbar spine MRI and found that Plaintiff had degenerative spondylosis, facet arthropathy, and disk disease. Tr. 674. Dr. Espinosa, however, found that there were no focal soft disk herniations.

Id. On August 27, 2013, examining radiologist Dr. Gladimiro Dávila ("Dr. Dávila") opined that Plaintiff had degenerative vertebral and disc disease with lumbar spasm. Tr. 503. However, the ALJ noted that Dr. Dávila indicated there was only mild degenerative changes over vertebral bodies with sclerosis over posterior elements. Tr. 107, 503.

On August 27, 2013, consultant general practitioner Dr. Yarelis Marie Pérez Rivera ("Dr. Pérez") examined Plaintiff and noted that he complained of low back pain. Tr. 505. Dr. Pérez found that Plaintiff had some reduced range of motion in the spine but that he had 5/5 strength in the lower extremities. Tr. 510, 512. Dr. Pérez also found that Plaintiff had 5/5 strength in both hands and the Tinel test and Phanel test were negative for both hands. Tr. 511.

In September 2013, state agency consultant internist Dr. Pedro Nieves ("Dr. Nieves") reviewed the record evidence and opined that Plaintiff could occasionally lift and carry 20 pounds, frequently lift and carry 10 pounds, stand and/or walk for 6 hours in an 8 hour workday, and sit for 6 hours in an 8 hour workday. Tr. 231. Dr. Nieves also found that Plaintiff was capable of pushing and pulling to the same extent as lifting and carrying and that he could frequently climb, balance, stoop, kneel, crouch, and crawl. Tr. 231.

In March 2014, Dr. Duprey examined Plaintiff and diagnosed him, in pertinent part, with lumbosacral radiculopathy, lumbar spondylarthritis, cervical spasm, and cervicalgia. Tr. 562-63. Dr. Duprey, however, found that Plaintiff had a normal gait and maintained 5/5 strength in bilateral biceps, triceps, wrist flexors, wrist extensors, hip flexors, hip extensors, quadriceps, ankle flexors, and ankle extensors. Tr. 562. Dr. Duprey also found 5/5 strength in Plaintiff's right finger abductor and 4/5 strength in his left finger abductor. Tr. 562.

In April 2014, state agency consultant internist Dr. Osvaldo Rivera ("Dr. Rivera") reviewed the record upon reconsideration and concurred with Dr. Nieves's opinion. Tr. 231, 247-

48. Additionally, Dr. Rivera opined that the evidence demonstrated that Plaintiff had a normal gait, no foot drop, no radicular signs, and normal motor strength in the extremities. Tr. 248. The ALJ reasonably assigned great weight to the opinions of Dr. Nieves and Dr. Rivera as they were consistent with the findings of Dr. Pérez and Dr. Duprey that Plaintiff had normal strength tests and some reduced range of motion in the lumbar spine. Tr. 109, 510-12, 562.

Plaintiff argues that opinions from treating cardiologist Dr. Arnaldo Zapata ("Dr. Zapata"), treating physiatrist Dr. Derick E. Colón López ("Dr. Colón"), and Dr. Duprey "significantly reduced his RFC to be in the sitting, standing and walking positions, and confirmed his necessity to constantly be alternating positions during periods of less than 30 minutes." ECF No. 12, at 13. In February 2014, Dr. Zapata examined Plaintiff and diagnosed him with hypertension, radiculopathy, insomnia, and mild mitral, tricuspid, and pulmonary regurgitation. Tr. 670. Subsequent progress notes from Dr. Zapata reflect similar findings.[5] Tr. 664, 666, 668. In September 2015 and March 2016, however, Dr. Zapata found "no evidence of abnormalities." Tr. 658, 660. Plaintiff's contention that Dr. Zapata's opinions significantly reduce his RFC is unfounded as he does not explain how Dr. Zapata's reports show evidence which is inconsistent with the ALJ's finding that Plaintiff could perform light work. See De Jesús Faria v. Finch, 336 F. Supp. 1069, 1071 (D.P.R. 1971) ("The mere presence of a disease or impairment is not in and of itself disabling, but it must be shown that the disease or impairment causes functional limitations which preclude plaintiff from engaging in substantial gainful activity.").

In May 2013, Dr. Colón examined Plaintiff and diagnosed him with discogenic low back pain, lumbosacral radiculopathy, discogenic cervicalgia, cervical radiculopathy, osteoarthritis,

---

[5] These progress notes refer to Dr. Zapata's treatment of Plaintiff in May 2014, October 2014, and February 2015.

13

rotator cuff tear, knee meniscal disease, and carpal tunnel, among other diagnoses. Tr. 654. Dr. Colón opined that Plaintiff was permanently disabled to return to his previous work or any type of work. Id. It was also opined by Dr. Colón that "his prognosis is poor for return to work that may provide a meaningful substantial salary." Id. The ALJ noted that although Dr. Colón indicated that Plaintiff was disabled, the issue of disability is a finding reserved solely to the Commissioner. Tr. 109; see 20 C.F.R. § 404.1527(d). Furthermore, Dr. Colón's opinion that Plaintiff may not be able to work a job paying a substantial salary does not mean that he is disabled. The proper inquiry is whether a claimant is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The ALJ reasonably assigned little weight to Dr. Colón's opinion as it was not consistent with the opinions of Dr. Duprey and Dr. Pérez that Plaintiff's strength tests were normal, and he exhibited only some diminished range of motion in the lumbar spine. Tr. 109, 510-12, 562. The ALJ also found that Dr. Colón's opinion was inconsistent with Plaintiff's normal range of daily activities which included driving, cooking, and helping his wife with household tasks. Tr. 109, 124-26, 520.

Lastly, Plaintiff argues that Dr. Duprey diagnosed him with lumbar spondylarthritis, cervical spasm, and cervicalgia in March 2014. Tr. 562-63. As stated earlier, the ALJ specifically considered Dr. Duprey's opinions in determining his RFC. Tr. 107. Plaintiff advances no arguments explaining how Dr. Duprey's opinion is inconsistent with the ALJ's RFC determination that Plaintiff could perform light work. Plaintiff has also not cited to any record evidence where Dr. Duprey assessed Plaintiff's functional limitations in the workplace. See De Jesús Faria, 336 F. Supp. at 1071.

Substantial evidence also supports the ALJ's mental RFC determination. Tr. 107-09. In October 2013, Dr. Toro examined Plaintiff and diagnosed him with anxiety disorder. Tr. 521. Dr. Toro, however, found that he was cooperative and calm during the interview and exhibited coherent and relevant speech. Id. Dr. Toro also found that Plaintiff was fully oriented, his attention, concentration, and retention were normal, and he maintained good memory. Id. It was also opined by Dr. Toro that Plaintiff's judgment and reasoning were not impaired and that he had good insight into his condition. Tr. 521.

In March 2014, Dr. Duprey diagnosed Plaintiff with memory loss. Tr. 562. The ALJ, however, noted that Dr. Duprey's progress notes did not show any tests showing an objective finding of actual memory loss. Tr. 108. Subsequent progress notes from Dr. Duprey showed that Plaintiff did not show signs of anxiety, depression, or sleep disturbance and that he had an appropriate affect and demeanor, as well as good insight and judgment.[6] Tr. 564, 566, 568, 570, 572, 574. The ALJ noted that during the hearing, Plaintiff was able to answer all questions posed, asked for clarification when required, and promptly recalled all relevant names, dates, and events. Tr. 108. The ALJ also noted that Plaintiff's alleged mental symptoms were inconsistent with his normal range of activities which included driving for up to 30 minutes, cooking simple meals, helping his wife with household tasks, and taking care of his own personal needs without supervision. Tr. 108, 124-26, 520.

In April 2014, Dr. Román reviewed the record and opined that Plaintiff could perform two-step simple commands, persist at tasks for two-hour intervals, interact with others, and adjust to changes. Tr. 250. The ALJ appropriately considered the medical evidence and opinions of record in determining Plaintiff's RFC. Thus, the ALJ's RFC determination is supported by

---

[6] These progress notes correspond to Dr. Duprey's treatment of Plaintiff in May 2014, September 2014, November 2014, December 2014, March 2015, and June 2015.

15

substantial evidence. See Evangelista v. Sec'y of Health & Human Servs., 826 F.2d 136, 144 (1st Cir. 1987) ("We must affirm the Secretary's [determination], even if the record arguably could justify a different conclusion, so long as it is supported by substantial evidence.").

**C. The Medical-Vocational Guidelines**

Plaintiff argues that Rule 201.14 and Rule 202.06 of the Medical-Vocational Guidelines ("the Grid") direct a finding of disability in the case at hand. ECF No. 12, at 14-15. "The Grid is a table used at step five of the sequential evaluation process that applies a claimant's vocational factors and her RFC to determine whether she should be found disabled." Vélez Valentín v. Astrue, Civ. No. 11-830, 2013 WL 322520, at *2 (D.P.R. Jan. 28, 2013) (citing 20 C.F.R. pt. 404, subpt. P, App. 2). "However, if the applicant has nonexertional limitations . . . that restrict her ability to perform jobs she would otherwise be capable of performing, then the Grid is only a framework to guide the decision." Sánchez Ortiz v. Comm'r of Soc. Sec., 995 F. Supp. 2d 53, 62 (D.P.R. 2014) (citing 20 C.F.R. § 416.969a(d)).

Plaintiff's claim that Rule 201.14 directs a finding of disability is unsustainable because it is premised on him having an RFC for sedentary work. See 20 C.F.R. Part 404, Subpart P, Appendix 2, Rule 201.14. As stated earlier, the ALJ's RFC determination for light work is supported by substantial evidence. Furthermore, Plaintiff's claim that Rule 202.06 directs a finding of disability is also without merit because he is not a person of advanced age. "The applicable regulation classifies age into three categories: (1) younger persons (under 50 years); (2) persons closely approaching advanced age (50–54 years); and (3) persons of advanced age (55 years and older)." Troncoso v. Astrue, Civ. No. 11-10726, 2012 WL 441753, at *6 (D. Mass. Feb. 9, 2012) (citing 20 C.F.R. § 404.1563(c)-(e)). Rule 202.06 applies to claimants of advanced age, which means age 55 and older. See 20 C.F.R. Part 404, Subpart P, Appendix 2, Rule 202.06;

substantial evidence. See Evangelista v. Sec'y of Health & Human Servs., 826 F.2d 136, 144 (1st Cir. 1987) ("We must affirm the Secretary's [determination], even if the record arguably could justify a different conclusion, so long as it is supported by substantial evidence.").

**C. The Medical-Vocational Guidelines**

Plaintiff argues that Rule 201.14 and Rule 202.06 of the Medical-Vocational Guidelines ("the Grid") direct a finding of disability in the case at hand. ECF No. 12, at 14-15. "The Grid is a table used at step five of the sequential evaluation process that applies a claimant's vocational factors and her RFC to determine whether she should be found disabled." Vélez Valentín v. Astrue, Civ. No. 11-830, 2013 WL 322520, at *2 (D.P.R. Jan. 28, 2013) (citing 20 C.F.R. pt. 404, subpt. P, App. 2). "However, if the applicant has nonexertional limitations . . . that restrict her ability to perform jobs she would otherwise be capable of performing, then the Grid is only a framework to guide the decision." Sánchez Ortiz v. Comm'r of Soc. Sec., 995 F. Supp. 2d 53, 62 (D.P.R. 2014) (citing 20 C.F.R. § 416.969a(d)).

Plaintiff's claim that Rule 201.14 directs a finding of disability is unsustainable because it is premised on him having an RFC for sedentary work. See 20 C.F.R. Part 404, Subpart P, Appendix 2, Rule 201.14. As stated earlier, the ALJ's RFC determination for light work is supported by substantial evidence. Furthermore, Plaintiff's claim that Rule 202.06 directs a finding of disability is also without merit because he is not a person of advanced age. "The applicable regulation classifies age into three categories: (1) younger persons (under 50 years); (2) persons closely approaching advanced age (50–54 years); and (3) persons of advanced age (55 years and older)." Troncoso v. Astrue, Civ. No. 11-10726, 2012 WL 441753, at *6 (D. Mass. Feb. 9, 2012) (citing 20 C.F.R. § 404.1563(c)-(e)). Rule 202.06 applies to claimants of advanced age, which means age 55 and older. See 20 C.F.R. Part 404, Subpart P, Appendix 2, Rule 202.06;

20 C.F.R. § 404.1563(e). Plaintiff was born in May 1964. Tr. 110. Therefore, at the time of the ALJ's decision in August 2016, Plaintiff was 52 years of age, and thus, a "person closely approaching advanced age" under the Grid.[7] 20 C.F.R. § 404.1563(d). Accordingly, Plaintiff's contention that Rule 202.06 directs a finding of disability is untenable as he was not a person of "advanced age" at the time of the ALJ's decision.

**IV.    Conclusion**

Based on the foregoing analysis, the court concludes that the decision of the Commissioner that Plaintiff was not entitled to disability benefits was supported by substantial evidence. Therefore, the Commissioner's decision is hereby AFFIRMED.

IT IS SO ORDERED.

In San Juan, Puerto Rico, this 23rd day of February, 2021.

s/Marcos E. López<br>U.S. Magistrate Judge

---

[7] Plaintiff admits that he was born in May 1964 and is a person "closely approaching advanced age" under the regulations. ECF No. 12, at 14-15.